IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Richmond Division



In the Matter of the Search of:

Information Associated With an Apple iPhone
Assigned Phone Number (346) 329-0751 and
IMEI# 358594363843920

No. 3:26-sw-**19**

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Tyler M. Blevins being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for records

and information associated with the cellular device assigned phone number (346) 329-0751 and

International Equipment Mobile Identity # 358594363843920, with listed subscriber Joewie

Rodriguez Vega (the "**TARGET DEVICE**"), whose service provider is T-Mobile, a wireless

telephone service provider with a service address of, Law Enforcement Relations Group, 4

Sylvan Way, Parsippany, NJ, 07054, including information about the location of the **TARGET**

**DEVICE**.  The **TARGET DEVICE** is described herein and in Attachment A, and the

information to be seized is described herein and in Attachment B.

2.      Because this warrant also seeks the prospective collection of dialing, routing,

addressing, and signaling information transmitted to or from the **TARGET DEVICE**, the

requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-

3127.  This Affidavit, the attached Attorney Certification (part of the Application for a Search

Warrant), and the requested warrant therefore include all the information required to be included

in an application and order pursuant to that statute. *See* 18 U.S.C. §§ 3122(b), 3123(b).

3.      I am a Special Agent with the Federal Bureau of Investigation, and have been since January 26, 2025. I attended and graduated from the FBI Academy in Quantico, Virginia. During my 19 weeks at the Academy, I received training on federal criminal procedure and investigative techniques to include interviewing witnesses and subjects, physical surveillance and electronic surveillance, data analysis, undercover operations, and human source development. I have been assigned to the FBI Richmond Field Office since June 2025, working primarily on violent criminal matters, to include violent criminal enterprises (gangs), threats, drug trafficking, firearm trafficking, and homicides.

4.      I have assisted on a host of different types of investigations. During these investigations, there were a variety of law enforcement techniques, including the use of confidential sources and physical surveillance, electronic surveillance, pen registers, telephone toll analysis, investigative interviews, and the preparation and execution of search and arrest warrants. Through these investigations, along with training and experience, and conversations with other agents and law enforcement personnel, I have become familiar with the methods used by offenders to commit federal crimes, to include their communication methods and concealment means.

5.      Prior to becoming a FBI SA, I was employed as a Tactical Specialist/Staff Operations Specialist for the FBI Richmond Charlottesville Resident Agency where I conducted financial and telephonic analysis for criminal and national security investigations, monitored court-authorized wiretaps (commonly referred to as Title IIIs) for multiple criminal investigations to include firearm trafficking, and participated in numerous state and federal search warrants involving violent offenders. Additionally, I assisted multiple investigations

2

involving threating communications online by actively reviewing and monitoring social media activity and creating detailed analytical reports to investigators.

6.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7.     Based on the facts set forth in this affidavit, there is also probable cause to believe that Joel L. Ayala-Rivera has violated 18 U.S.C. 922(g)(5), alien in possession of a firearm. Ayala-Rivera was charged with this crime on February 3, 2026, and is the subject of an arrest warrant issued on February 3, 2026. There is also probable cause to believe that the location information described in Attachment B will assist law enforcement in arresting Ayala-Rivera who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

8.     The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. §§ 2711(3) and 3127(2). Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. §§ 2711(3)(A)(i), 3127(2)(A)(i).

## PROBABLE CAUSE

9.     The United States, including the FBI, is and has been conducting a criminal investigation of Joel L. Ayala-Rivera regarding possible violations of 18 U.S.C. 922(g)(5), alien in possession of a firearm; 18 U.S.C. 922(g)(1), felon in possession of a firearm, and 21 U.S.C. 841(a)(1), possession with the intent to distribute and distribution of fentanyl and marijuana.

3

10.    On February 3, 2026, Ayala-Rivera was indicted in a one-count indictment with being an alien in possession of a firearm, in violation of 18 U.S.C. 922(g)(5).

11.    Since May 2023, agents have been investigating a group of individuals, primarily operating in the metro Richmond area, believed to be involved in multiple criminal activities, including illegal firearms possession by aliens and felons, narcotics distribution, and aggravated assaults. Agents identified Joel Ayala-Rivera as one of the members of the group in this area.

12.    I have reviewed Ayala-Rivera's Alien-File, which contains his immigration-related documents. These documents reflect that Ayala-Rivera is a citizen of Honduras and not of the United States, and that he entered the United States unlawfully, illegally, and without permission from the Attorney General or her designees or any other immigration official with such authority, and that he remains present in the United States without having obtained any such permission.

13.    On April 15, 2024, using Confidential Human Source, the FBI purchased a firearm, a Glock handgun, from Ayala-Rivera in exchange for cash. The CHS was searched beforehand, was not in possession of a firearm or any contraband and was equipped by FBI agents with audio- and video-recording equipment. FBI provided the CHS with cash to purchase the firearm with. The CHS drove to the meet location and the CHS wore the audio- and video-recording equipment when they met with Ayala-Rivera. The video recording captures Ayala-Rivera holding the Glock handgun in his hand before he handed it to the CHS. It also shows Ayala-Rivera holding the cash the CHS handed him. It also shows Ayala-Rivera's face and distinctive tattoos, and I recognize it to be him based on photographs available to law enforcement. After the controlled purchase, the CHS identified Ayala-Rivera as being the person who had sold him the Glock firearm. These events occurred in Richmond Virginia, and

4

the controlled purchase occurred inside a residence on Carnation Street in Richmond, Virginia, which is within the Eastern District of Virginia and the jurisdiction of this Court.

14.    These events form the basis for the February 3, 2026, indictment that a federal grand jury sitting in Richmond, Virginia, returned against Ayala-Rivera.

15.    The TARGET DEVICE is subscribed with T-Mobile by Joewie Rodriguez Vega, with an address of 4902 Summerset Avenue, Henrico, Virginia, 23231. However, the TARGET DEVICE was identified as a matter of fact belonging to, and being actively used by, Ayala-Rivera, in three ways. First, Ayala-Rivera's probation officer in the Virginia Department of Corrections Richmond probation office provided the FBI with this number as being the contact phone number for Ayala-Rivera as of January 20th, 2026. Second, on or about September 19th, 2025, an FBI Task Force Officer who has participated in this investigation provided Ayala-Rivera with the TFO's department-issued cell phone number; and, on or about January 23, 2026, at 3:10 p.m., the TFO received a text message from the TARGET DEVICE, "Hello . . . I am Joel Rivera." Third, on or about January 26th, 2026, Ayala-Rivera, utilizing Instagram account @66__6__, posted a photo of himself holding a white in color iPhone in a gray case.

16.    Ayala-Rivera's precise whereabouts are unknown and so there is probable cause that the requested information is needed for the next 45 days to ensure that Ayala-Rivera is located and arrested in a timely and safe manner. Further, based on surveillance, controlled purchase operations, and information provided by the CHS described above, Ayala-Rivera has moved his primary residence several times over the past two years.

17.    In my training and experience, I have learned that T-Mobile is a company that provides wireless telecommunications services to the general public. Wireless telecommunications providers offer mobile phone and data services by connecting users to a

network of small areas, called "cells," which work together to provide coverage for making calls, sending texts, and using the internet on mobile devices. This is commonly referred to as cellular service.

18.    I also know that providers of cellular service have technical capabilities that allow them to collect and generate information that can be used to estimate the locations of the devices to which they provide service through a unique identifier such as a phone number, IMEI, or IMSI. This includes information regarding the antenna and/or tower used and timing advance data.

19.    Cell-site data, also known as "tower/face information" or "cell tower/sector records," identifies the "cell towers" (i.e., antenna towers and antenna systems covering geographic areas) that received a signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. The geographic density of these towers may vary greatly over a given area with, for example, antenna systems typically located more closely to other network elements in urban areas and further apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides only an approximate general location of the cellular device.

20.    Based on my training and experience, I know that wireless providers, including T-Mobile, collect and retain cell-site data in their normal course of business pertaining to communications to or from cellular devices to which they provide service. I also know that this data often includes: (1) the date, time and type of the communication; (2) information identifying the device involved, if any; (3) the cell tower to which the customer connected at the beginning

6

of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication.

21.     Timing advance data, also known as "per-call measurement data," is specialized location information that measures the approximate distance of a cellular device from a cellular antenna and/or tower based upon the time it takes for signals to travel between the device and the tower. This information can provide an approximate location range that is more precise than typical cell-site data. Based on my training and experience, I know that wireless providers, including T-Mobile, collect and retain specialized location information in the normal course of their business and apply their own methodology to derive the estimated location of the device in latitude and longitude (and in some cases, to generate a level of confidence in this estimate). This category of data is known by different names (one example of such a name used by a cellular provider is the acronym LOCDBOR). I also know that specialized location information often includes the date and start- and end-time of the associated signal or communication, the cell tower and estimated distance from it, and an estimated location and confidence interval.

22.     Based on my training and experience, I know that T-Mobile can collect location information including by using one method that consists of initiating a signal to determine the location of the **TARGET DEVICE** on that provider's network.

23.     Based on my training and experience, I know that wireless providers such as T-Mobile typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as T-Mobile typically collect and retain information about their subscribers' use of the

7

wireless service, such as records about calls or other communications sent or received by a particular device, unique identifiers and other information about devices used by the subscriber, and other transactional records, in their normal course of business. I also know that wireless providers such as T-Mobile can record, decode, and/or capture the dialing, routing, addressing, and signaling information transmitted to or from cellular devices utilizing their wireless service. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the location of the user or users of the **TARGET DEVICE** and may assist in the identification of co-conspirators and/or victims, as well as Ayala-Rivera's location.

## GOVERNMENT REQUESTS

24.    Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. §§ 2703(c)(1)(a) and Federal Rule of Criminal Procedure 41, and pen register and trap and trace order pursuant to 18 U.S.C. § 3123 authorizing the installation and use of a pen register and/or trap and trace device to record, decode, and/or capture the dialing, routing, addressing, and signaling information transmitted to or from the **TARGET DEVICE.** These authorities are requested without geographic limit, for a period of **45 days** from the date of this warrant pursuant to 18 U.S.C. § 3123(c)(1). The proposed search warrant and order does not request and does not seek to obtain the contents of any communications, as defined in 18 U.S.C. § 2510(8).

25.    I further request that the Court direct T-Mobile to disclose to the government any information described in Section I of Attachment B that is within the possession, custody, or control of T-Mobile. I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the

information described in Attachments A and B unobtrusively and with a minimum of interference with T-Mobile's services. The government shall reasonably compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

26.    There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **TARGET DEVICE** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

27.    I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the TARGET DEVICE outside of daytime hours, to effectuate Ayala-Rivera's safe and timely arrest.


Special Agent Tyler M. Blevins
Federal Bureau of Investigation


Subscribed and sworn to before me on  FEB. 4th  , 2026


/s/ MRC

Mark R. Colombell
UNITED STATES MAGISTRATE JUDGE

Date: FEB. 4, 2026
Richmond, Virginia

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular device assigned phone number assigned phone number (346) 329-0751 and International Equipment Mobile Identity # 358594363843920, with listed subscriber Joewie Rodriguez Vega (the "**TARGET DEVICE**"), including information about the location of the **TARGET DEVICE**, that is within the possession, custody, or control of T-Mobile, a wireless telephone service provider with a service address of, Law Enforcement Relations Group, 4 Sylvan Way, Parsippany, NJ, 07054, including information about the location of the **TARGET DEVICE** if it is subsequently assigned a different phone number.

## ATTACHMENT B

### Particular Things to be Seized

**I.    Information to be Disclosed by T-Mobile (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information:

A.    The following information about the account associated with the **TARGET DEVICE** described in Attachment A:

1.    Names (including subscriber names, usernames, and screen names);

2.    Addresses (including mailing addresses, service addresses, residential addresses, business addresses, and e-mail addresses);

3.    Records of session times and durations from January 3, 2026 to February 3, 2026;

4.    Length of service (including start date) and types of service utilized;

5.    Telephone or instrument numbers (including model type/numbers, phone numbers, IMSIs, IMEIs, MEIDs, SUPIs, and MAC addresses);

6.    Other subscriber numbers or identities, including any temporarily assigned network addresses (including the registration and session Internet Protocol ("IP") addresses with associated port numbers); and

7.    Means and source of payment for such service (including any credit card or bank account number).

B.    All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the **TARGET DEVICE** described in Attachment A between January 3, 2026, and February 3, 2026, including:

1.    The date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination phone numbers); call detail records for voice, SMS, MMS, and data; email addresses, and IP addresses; and

2.    Information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received, including call detail records; and

3.    Specialized location data including timing advance data, per-call measurement data, and other historical location data (including data identified as Range-to-Tower (RTT), LOCDBOR, TrueCall, and similar data sets).

C.    For a period of **45 days** from the date of this warrant, all non-content dialing, routing, addressing, and signaling information, including all non-content packet switched data, transmitted to or from the **TARGET DEVICE** described in Attachment A, through the furnishing of information, facilities, technical assistance, and the installation and use of a pen register and trap and trace device pursuant to 18 U.S.C. §§ 3123 and 3124.

For a period of **45 days** from the date of this warrant, all information about the location of the **TARGET DEVICE** described in Attachment A, during all times of day and night, however derived (to include, but not limited to: cell-site location information; timing advance data, per-call measurement data, and triangulation data (including RTT, LOCDBOR, TrueCall and similar or associated location based services)); and data generated by a wireless provider to provide emergency dispatchers with the location of a device.

In addition, PROVIDER must furnish the government all information, facility, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with PROVIDER's services, including by initiating a signal to determine the location of the target telephone on PROVIDER's network or with such other reference points as may be reasonably available.

2

## II.        Information to Be Seized by the Government

All information described above in Section I that will assist in arresting Joel L. Ayala-Rivera, who on February 3, 2026, was charged with violating 18 USC 922(g)(5) on or about April 15, 2024, is the subject of an arrest warrant issued on February 3, 2026, and is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).  Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

The government shall compensate PROVIDER for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information.  *See* 18 U.S.C. § 3103a(b)(2).

3

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| In the Matter of the Search of:<br><br>Information Associated With an Apple iPhone Assigned Phone Number (346) 329-0751 and IMEI# 358594363843920 | No. 3:26-sw-19 |

## NOTICE

☒ The undersigned attorney certifies that the attached Application, Warrant, and proposed Orders precisely follow the language previously approved by the Magistrate Judges of the Eastern District of Virginia.

☐ The undersigned attorney certifies that the attached Application, Warrant, and proposed Orders precisely follow the language previously approved, except for the following specified paragraphs or items:

Respectfully submitted,

_____
Patrick J. McGorman
Assistant United States Attorney

VERSION: May 2025